# JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| **RASHON HAYES, individually and on behalf of all others similarly situated,** | Case No.: CV 20-03063-CJC(KSx) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 8]** |
| v. |  |
| **SALT & STRAW, LLC and DOES 1–50,** |  |
| Defendants. |  |

## I. INTRODUCTION

Plaintiff Rashon Hayes filed this putative wage-and-hour class action against Defendant Salt & Straw, LLC ("Salt & Straw") and unnamed Does in Los Angeles County Superior Court. (Dkt. 1-5 Ex. A [Complaint, hereinafter "Compl."].) Salt &

-1-

Straw removed the action to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (Dkt. 1 [Notice of Removal, hereinafter "NOR"].)  Before the Court is Plaintiff's motion to remand.  (Dkt. 8 [hereinafter "Mot."].)  For the following reasons, the motion is **GRANTED**.[1]

## II. BACKGROUND

Plaintiff worked for Salt & Straw as an hourly non-exempt employee from July 2019 to December 2019 in Los Angeles County.  (Compl. ¶ 18.)  Plaintiff and certain other employees allegedly worked on an "alternative workweek schedule."  (*Id.* ¶ 28.)  Under California law, an alternative workweek schedule is "any regularly scheduled workweek requiring an employee to work more than eight hours in a 24-hour period."  Cal. Lab. Code § 500.  If an employer and a unit of employees agree to adopt an alternative workweek schedule, those employees forfeit their right to collect overtime wages for working more than ten hours per day.  *Id.* § 511.  In exchange, they are generally scheduled to work fewer days per week and still earn overtime if they work more than forty hours in one week.  *See id.*  A proposal to adopt an alternative workweek schedule can be ratified by any "readily identifiable work unit" if it receives more than two-thirds of the votes in a secret ballot.  *Id.*  Based on the evidence in the record, approximately 15 percent of Salt & Straw's hourly employees were part of an alternative workweek unit.  (*See* Dkt. 9-2 ¶ 6.)  The Complaint does not include any other details about Plaintiff's role, salary, or terms of employment.

On February 20, 2020, Plaintiff brought this suit in Los Angeles County Superior Court.  (Compl.)  Plaintiff asserts nine causes of action under California's Labor Code for

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for June 1, 2020 at 1:30 p.m. is hereby vacated and off calendar.


(1) unpaid overtime wages, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) unpaid minimum wages, (5) final wages not timely paid, (6) untimely wages during employment, (7) non-compliant wage statements, (8) failure to keep accurate payroll records, and (9) unreimbursed business expenses, as well as a tenth cause of action for (10) violations of California's Unfair Competition Law. (*See id.*) Plaintiff asserts these claims on behalf of a proposed class of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." (*Id.* ¶ 13.) Plaintiff also proposes a subclass of employees who earned non-discretionary bonuses ("Subclass A") and another subclass of employees who worked on an alternative workweek schedule ("Subclass B"). (*Id.*)

Plaintiff alleges broadly that Salt & Straw engaged in "a pattern and practice of wage abuse against their hourly-paid or non-exempt employees" that "involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned and for missed meal periods and rest breaks in violation of California law." (*Id.* ¶ 25.) The boilerplate allegations in the complaint assert that Salt & Straw failed to properly compensate employees, forced them to work through required breaks, and failed to keep accurate records. (*See id.* ¶¶ 24–50.) Salt & Straw also allegedly failed to include non-discretionary bonuses in the regular rate of pay used to calculate overtime wages for Subclass A employees, (*id.* ¶ 27), and failed to properly compensate Subclass B employees for overtime wages based on their alternative workweek schedule, (*id.* ¶ 28). Plaintiff has not alleged any other facts about Salt and Straw's practices and policies, the frequency of the alleged Labor Code violations, or the resulting damages.

Plaintiff served Salt & Straw with a summons and the Complaint on March 2, 2020. (*See* Dkt. 1-5 Ex. B.) On April 1, 2020, Salt & Straw filed a Notice of Removal to

this Court pursuant to CAFA.  (NOR.)  The Court now considers Plaintiff's motion to remand to state court.

**III. ANALYSIS**

A civil action brought in a state court but over which a federal court may exercise original jurisdiction may be removed to a federal district court by the defendant.  CAFA provides original federal jurisdiction over class actions in which the amount in controversy exceeds $5 million, there is minimal diversity between the parties, and the number of proposed class members is at least 100.  28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B).  "Congress designed the terms of CAFA specifically to permit a defendant to remove certain class or mass actions into federal court. . . [and] intended CAFA to be interpreted expansively."  *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).  The Supreme Court has also held that "no antiremoval presumption attends cases invoking CAFA" because CAFA was enacted to facilitate federal courts' adjudication of certain class actions.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 550 (2014).

Plaintiff contends that this case must be remanded because Salt & Straw has not properly established that the amount in controversy exceeds $5 million.[2]  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 135 S. Ct. at 554.  However, if the asserted amount in controversy is contested after removal, "[e]vidence establishing the amount is required."  *Id.* at 554.  "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-

---

[2] Plaintiff does not dispute that the other two CAFA requirements—minimal diversity and minimum class size—have been met.  (*See generally* Mot.)  Plaintiff and Salt & Straw are citizens of different states for diversity purposes, and records show that Salt & Straw employed over 100 qualifying class members.  (*See* NOR ¶¶ 13–26.)

controversy requirement has been satisfied." *Id.* at 550. Ultimately, the defendants bear the burden of proving that the amount in controversy is met. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.

Plaintiff challenges Salt & Straw's removal on two grounds. First, he argues that its evidence is unreliable and must be disregarded. Second, he argues that Salt & Straw "relied on inappropriate and inaccurate assumptions in its calculations [of the amount in controversy]." (Mot. at 7.) The Court rejects Plaintiff's first argument, but agrees that Salt & Straw relied on unreasonable assumptions to estimate the amount in controversy.

### A. Competent Evidence

Because Plaintiff contests the amount in controversy, Salt & Straw must provide evidence to support their calculations. To satisfy that requirement, it submits declarations from Michelle Lacy, its Human Resource Manager, (Dkt. 1-4 [hereinafter "Lacy Decl."]; Dkt. 9-2 [hereinafter "Lacy Supp. Decl."]), and Armine Antonyan, its counsel in this action, (Dkt. 1-2; Dkt. 9-1). Based on her review of company records, Lacy offers the following facts: (1) Salt & Straw employed approximately 1,329 hourly employees in California between February 20, 2016 and February 20, 2020; (2) these employees worked approximately 46,960 workweeks; (3) the average hourly rate for these employees during this period was $14.19. (Lacy Supp. Decl. ¶¶ 8–9.) Lacy presents this information based on her review of regularly kept payroll records. (*Id.* ¶ 2.)

Plaintiff argues that Lacy's declarations must be rejected because Salt & Straw failed to submit the underlying payroll records. The Court disagrees and finds the

declarations well-supported and competent evidence for the purposes of this motion. *See Ibarra v. Manheim Invs.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Because the Plaintiff has offered no competing evidence and because there is no indication that it is unreliable, Lacy's declaration is sufficient to satisfy Salt & Straw's burden of production. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 398 (9th Cir. 2010); *Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *2-9 (S.D. Cal. Nov. 1, 2019) (finding that declarations of the director of human resources, along with allegations in the complaint, sufficient to demonstrate the amount in controversy exceeded $5 million); *Andrade v. Beacon Sales Acquisition, Inc.*, 2019 WL 4855997, at *4 (C.D. Cal. Oct. 1, 2019) (similar); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (similar).

### B. Assumed Violation Rates

Plaintiff next argues that Salt & Straw's estimate of the amount in controversy relies on unreasonable and unfounded assumptions. As is common in wage-and-hour cases, the amount in controversy turns on the frequency of the alleged violations of California labor laws. *See, e.g., Gant v. ALDI, Inc.*, 2020 WL 1329909 (C.D. Cal. Mar. 20, 2020); *Lopez v. First Student, Inc.*, 2019 WL 8137149 (C.D. Cal. Dec. 2, 2019). The complaint does not specify how often the violations occurred, but alleges only a "pattern and practice of wage abuse." (Compl. ¶ 25.) In *Arias v. Residence Inn by Marriott*, the Ninth Circuit addressed how courts should resolve the resulting ambiguity. 936 F.3d 920 (9th Cir. 2019). It explained that a removing defendant is entitled to make "reasonable assumptions" about violation rates to estimate the amount in controversy. *Id.* at 925. "[A]n assumption may be reasonable if it is founded on the allegations of the complaint."

*Id.* These assumptions must also cohere with the actual evidence presented by the parties. *See id.* Importantly, according to *Arias*, a plaintiff who alleges a "pattern and practice" of labor law violations does not allege "that this 'pattern and practice' is universally followed every time the wage and hour violation could arise." *Id.* (quoting *Ibarra*, 775 F.3d at 1199). In other words, "a 'pattern and practice' of doing something does not necessarily mean always doing something." *Ibarra*, 775 F.3d at 1198–99.

In its opposition, Salt & Straw contends that it can reach the $5 million threshold based on the following "conservative" estimates of only four claims:

- Overtime wage claim (first cause of action): $666,362.40
- Minimum wage claim (fourth cause of action): $699,500
- Timely final wages or "waiting time" claim (fifth cause of action): $2,927,508
- Wage statement claim (seventh cause of action): $942,250
- **Total**: **$5,235,620.40**

(Dkt. 9 [Salt & Straw's Opposition to Mot., hereinafter "Opp."] at 2.) After reviewing the allegations in the complaint and the evidence presented by Salt & Straw, the Court finds that these estimates rely on unreasonable and unsubstantiated assumptions.

1. <u>Overtime Wage Claim (First Cause of Action)</u>

Plaintiff's first cause of action is for unpaid overtime wages. *See* Cal. Lab. Code § 510. As discussed above, Lacy found that Salt & Straw employed 1,329 qualifying employees who worked 46,960 workweeks at $14.19/hour during the relevant period. (Lacy Supp. Decl. ¶¶ 8–9.) To calculate a "conservative" estimate for Plaintiff's overtime wage claim, Salt & Straw assumed one hour of unpaid overtime per employee workweek. (*See* Opp. at 13.) Accordingly, it calculated the amount in controversy for

this claim as follows: 46,960 workweeks x 1 hour of wages x $14.19/hour = $666,362.40. (*See* Opp. at 13.)[3]

This assumption ignores Salt & Straw's own evidence. After reviewing payroll records from February 20, 2017 to March 19, 2020, Lacy found that "there were at least 170 employees, who generally worked in excess of eight (8) hours each work day . . . and 1080 employees who generally worked five (5) hours in a work day." (Lacy Supp. Decl. ¶ 6.) In other words, 86 percent of Salt & Straw's hourly employees generally worked a schedule that would not allow them to earn *any* overtime wages, even if they worked seven days a week. (*See id.*); Cal. Lab. Code § 510 (overtime wages earned for work in excess of eight hours in one workday or 40 hours in one workweek). The assumed violation rate of one-hour unpaid overtime per employee workweek directly contradicts this evidence and is therefore unreasonable. *See Arias*, 936 F.3d at 925. A reasonable estimate would be limited to the 14 percent of employees that might have worked overtime hours. This puts the amount in controversy for this claim closer to $150,000,[4] and brings Salt & Straw's "conservative" estimate of the total amount in controversy below the $5 million threshold.

### 2. Waiting Time Penalties (Fifth Cause of Action)

Plaintiff's fifth cause of action is for violations of California Labor Code § 203, which provides that "[i]f an employer willfully fails to pay, without abatement or reduction . . . any wages of an employee who is discharged or who quits, the wages of the

---

[3] It is not clear why Salt & Straw used the employees' regular rate of pay in this calculation. It also calculated an estimate based on an average overtime rate of $21.20 per hour: 46,960 workweeks x 1 hour of wages x $21.20/hour = $995,552.00. (*See* Opp. at 13.)

[4] 46,960 workweeks x 1 hour of wages x $21.20/hour x 14% of employee workweeks = $ 149,332.80. Without evidence addressing the distribution of employee work hours, it is impossible to assess whether the 14 percent of employees working longer shifts worked a disproportionate percentage of the total workweeks.

employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.  In other words, an employer accrues a penalty of one day's wages for every day that the employee's final wages are willfully withheld—with a maximum penalty of thirty days' wages. *See id.*  Salt & Straw asserts that the amount in controversy for Plaintiff's final wages claim is $2,927,508.  This estimate also relies on several assumptions that the Court finds unreasonable.

To calculate the amount in controversy for Plaintiff's final wages claim, Salt & Straw assumes that *every* employee who was terminated during the relevant period was denied final wages for the statutory maximum thirty days. (*See* Opp. at 9–11; NOR ¶¶ 34–35).  This assumption is not supported by the Complaint, which does not allege uniform violations.  (*See* Compl. ¶ 89 ["During the relevant time period, Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ."].)  While Plaintiff alleges a "pattern and practice" of violations, this does not support a 100 percent violation rate absent other evidence, which Salt & Straw has not offered. *See Arias*, 936 F.3d at 925.  As this Court explained in a similar case, "[a] removing party can assume extreme violation rates only if supported by allegations in the pleadings." *Brancaccio v. Knauf Insulation, Inc.*, 2020 WL 1686253, at *4 (C.D. Cal. Apr. 7, 2020) (citing *Arias*, 936 F.3d at 926).  Nothing in the instant complaint suggests that this is an extreme case. *See id.*

Nor do Plaintiff's other claims support help establish a 100 percent violation rate. Salt & Straw appears to argue that because Plaintiff alleges a pattern and practice of overtime and minimum wage violations, it is reasonable to assume that every employee was underpaid in his or her final wages.  The Court disagrees.  First, as discussed above, Salt & Straw's own evidence suggests that only 14 percent of class members will have

viable overtime wage claims. (*See* Lacy Supp. Decl. ¶ 6.) The Court also finds it unreasonable to assume that every employee's final paycheck reflected a minimum wage violation. In its opposition to the instant motion, Salt & Straw assumes a violation rate of one hour of off-the-clock work for every three pay periods. (Opp. at 15.) This plainly contradicts the 100 percent violation rate assumed here. Regardless, even if Salt & Straw could reasonably assume one hour off-the-clock work for every pay period, this would be an *average* violation rate across thousands of employees and employee pay periods. It requires another leap to assume that *every* employee was underpaid in his or her final paycheck. With no allegations or evidence suggesting a uniform policy of withholding final wages, the Court finds this assumption unreasonable and therefore finds Salt & Straw's $2,927,508 estimate unreasonably inflated. *See Arias*, 936 F.3d at 925–26.

### 3.  Wage Statement Claim (Seventh Cause of Action)

Plaintiff's seventh cause of action is for inaccurate wage statements in violation of California Labor Code § 226(a). (*See* Compl. ¶¶ 99–105.) Salt & Straw estimates the amount in controversy for this claim at $942,250. Once again, Salt & Straw relies on a 100 percent violation rate, which the Court finds unreasonable. Specifically, Salt & Straw assumes that every wage statement for every employee during the relevant period was non-compliant. (*See* Opp. at 14.) Quoting a pre-*Arias* district court decision, Salt & Straw contends that "[i]t is not unreasonable to assume that, with this many violations alleged, every one of the wage statements issued during the class period could potentially have been noncompliant." (*Id.* [quoting *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *6 (C.D. Cal. May 21, 2015)].) *Arias* casts serious doubt on this logic. The Ninth Circuit explained that a removing defendant is entitled to make "reasonable assumptions" about violation rates grounded in the allegations in the pleadings. *See Arias*, 936 F.3d at 925–26. The *number* of claims in a wage-and-hour complaint has no obvious relationship to the *frequency* of the alleged labor law violations. If it is

unreasonable to assume a 100 percent violation rate for Plaintiff's substantive claims, the Court fails to understand why it would be reasonable to assume a 100 percent violation rate for his derivative claims. *See id.* Accordingly, the Court finds Salt & Straw's $942,250 estimate for Plaintiff's wage statement claim is unreasonably inflated.

### 4. Remaining Claims & Total Amount in Controversy

The only other claim addressed by Salt & Straw is Plaintiff's fourth cause of action for minimum wage violations or "off-the-clock" work. In its notice of removal, Salt & Straw estimated the amount in controversy for this claim at approximately $2.4 million. (NOR ¶¶ 38–39.) To reach this figure, Salt & Straw assumed a minimum wage violation in every pay period for every employee throughout the relevant period. (*See id.*) In the instant motion, Plaintiff challenged this assumption as unreasonable, unrealistic, and unsupported by the allegations in the complaint. (*See* Mot. at 8.) In its opposition, Salt & Straw declined to respond to this argument and instead offered a more conservative estimate of $699,500—based on an assumed violation rate of one hour of off-the-clock work for every three pay periods. (*See* Opp. at 15.) The Court finds this estimate reasonable. However, the problems discussed above brings the total amount in controversy below the $5 million threshold. Because Salt & Straw made no attempt to defend the assumptions underlying its original $2.4 million assessment of Plaintiff's minimum wage claim, the Court cannot revisit that figure here. *See Ibarra*, 775 F.3d at 1199 (holding that the removing party has "the burden to show that its estimated amount in controversy relie[s] on reasonable assumptions").

In its notice of removal and its opposition to the instant motion, Salt & Straw failed to address Plaintiff's other six causes of actions and request for other forms of relief, including attorney fees. The Court cannot *sua sponte* consider these claims in its own assessment of the amount in controversy. *See id.*; *Rodriguez*, 728 F.3d at 978 (explaining

that the removing defendant has the burden of establishing by a preponderance of the evidence that the amount in controversy satisfies CAFA); *Arias*, 936 F.3d at 927 ("The defendant retains the burden [] of proving the amount of future attorneys' fees by a preponderance of the evidence."). In its opposition to the instant motion, Salt & Straw offered an estimate of the amount in controversy that barely cleared the $5 million threshold. Because that estimate relied on several unreasonable assumptions, it must be rejected. Although Salt & Straw's notice of removal included higher estimates, the evidence in the record undercuts those initial figures, (*compare* NOR *with* Lacey Supp. Decl.), and Salt & Straw failed to defend its more aggressive estimates in opposition to the instant motion, (*see* Opp.).

## IV. CONCLUSION

For the foregoing reasons, Salt & Straw has not carried its burden to show that the Court has subject matter jurisdiction over this action under CAFA. Accordingly, Plaintiff's motion to remand is **GRANTED**, and this case is hereby **REMANDED** to Los Angeles County Superior Court.

DATED: May 27, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE